IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DEVON SYKES,** | ) | Civil Action No. 7:14cv00017 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | By: Norman K. Moon |
| **SGT. LARRY ROSS COLLINS,** *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

Devon Sykes, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants subjected him to excessive force and violated his right to due process. The defendants moved for summary judgment, and Sykes responded thereto, making this matter ripe for disposition. Upon review of the record, I conclude that defendant Bishop is entitled to summary judgment but that disputes of material facts exist as to the remaining defendants. Accordingly, I will grant in part and deny in part the defendants' motion for summary judgment.

I.

Sykes alleges that defendants Artrip, Fannin, and Kiser had Sykes "strapped down in five-point restraints" for more than 20 hours on September 13 and 14, 2013, after Sykes broke the sprinkler head in his cell.[1] Sykes alleges that he was not disruptive while restrained and that, despite his complaints of pain and pleas for help, defendants Artrip, Fannin, Kiser, Messer, Dixon, Coyle, Akers,[2] Stidham, and Collins refused to feed Sykes or give him bathroom or stretch breaks during the entire 20 hours. As a result of the 20 continuous hours in five-point

---

[1] Sykes originally alleged that he was placed in five-point restraints for "approximately 18 hours," but the defendants' evidence shows he was restrained for more than 20 hours. Sykes adopts this time calculation in his response to the defendants' motion for summary judgment.

[2] Sykes originally named Adkins as a defendant in his complaint; however, after the Office of the Attorney General advised the court that Red Onion State Prison did not employ an officer by that name, Sykes notified the court that he meant to name Akiers instead of Adkins. Thereafter, the Office of the Attorney General notified the court that the defendant's name was properly spelled Akers.

restraints, Sykes alleges that he urinated on himself and suffered chills, "extreme cramps and pain in his muscles and joints." Sykes argues that the defendants' use of five-point restraints with no food or breaks for 20 hours constituted an excessive use of force and that his inability to challenge the use of force constituted a due process violation. Sykes also argues that "less forceful, yet equally effective ambulatory restraints" were available but not used.

The defendants, however, tell a different story in their motion for summary judgment. The defendants state that on September 13, 2013, Sykes flooded his toilet and broke the sprinkler head in his cell. After the water to Sykes' cell was shut off, Sykes was ordered to turn around to be restrained, and Sykes complied. Once Sykes was removed from his cell, Sykes stated that he was just going to break another sprinkler head as soon as he got the chance. Due to his destruction of state property and threat to do it again, Sykes was placed in five-point restraints. After Sykes was secured in the five-point restraints, a nurse checked the restraints and confirmed that they were appropriately applied. Sykes was placed in the five-point restraints at approximately 11:10 a.m. and remained that way until approximately 7:45 a.m. the next day.

The defendants allege that during the more than 20 hours that Sykes was in five-point restraints, defendants and other staff checked Sykes every 15 minutes and offered him dinner and three bathroom breaks, all of which he refused.[3] The defendants also allege that Sykes was disruptive while he was retrained, cursing and threatening to break another sprinkler head and to throw feces on any correctional officer who let him up. The defendants state that they released

---

[3] While the defendants submitted video footage of Sykes' placement and removal into five-point restraints, they did not submit video of his ongoing confinement or periods when he was offered and refused food or bathroom breaks.

Sykes from the restraints when his behavior improved and that, when he was released from the restraints the next morning, Sykes did not report any complaints or injuries.[4]

In response to the defendant's motion for summary judgment, Sykes denies that he was disruptive and that he was offered a meal or bathroom breaks while he was restrained. Sykes also alleges that the defendants refused his "repeated pleas for breaks to relieve his pain and suffering and his requests to clean his body and get medical care."

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

---

[4] The defendants submitted copes of log books from the time period at issue that indicate Sykes was disruptive while restrained. I note that the last two entries indicating that Sykes was disruptive in any way were at 1:46 a.m. and 4:05 a.m. Sykes was not released from the restraints until 7:45 a.m.

3

### III.

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Inasmuch as Sykes alleges no facts involving defendant Bishop, the court finds that Sykes has failed to state a claim under § 1983 against Bishop. Therefore, I will grant the motion for summary judgment as to Bishop.

### IV.

Sykes' excessive force claim challenges his continued confinement in five-point restraints for more than 20 hours. I find material disputes of fact exist as to this claim and, therefore, will deny summary judgment to the remaining defendants on it.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To resolve a claim that prison staff's excessive force violated the Eighth Amendment, the court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21. Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 321; *see, e.g., Wilkins v. Gaddy*, 559 U.S. 34 (2010).

The use of five-point restraints in a good faith effort to control an inmate is not *per se* unconstitutional. *See Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996); *Sadler v. Young*,

4

325 F. Supp. 2d 689, 702 (W.D. Va. 2004), *rev'd on other grounds*, 118 F. App'x 762 (4th Cir. 2005). However, courts have found that continued restraint of this type, without legitimate purpose, can state a constitutional violation. *See Williams*, 77 F.3d at 763; *Sadler*, 325 F. Supp. 2d at 702. "[When] the immediacy of the disturbance [i]s at an end . . . the unnecessary infliction of continued pain throughout a prolonged time period clearly supports an inference that the guards were acting to punish, rather than to quell the disturbance." *Williams*, 77 F.3d at 765 (citing *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir.1990) ("[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective.") (quotations omitted)). Thus, continued use of five-point restraints on an inmate who does not currently pose any threat to security or discipline can violate the Eighth Amendment, even when that inmate does not suffer significant physical injuries. *See Sadler*, 325 F. Supp. 2d at 704; *Davis v. Lester*, 156 F. Supp. 2d 588, 594 (W.D. Va. 2001).

Sykes alleges that he was not disruptive, was denied food and bathroom or stretch breaks, and suffered "extreme cramps and pain in his muscles and joints" and was forced to urinate on himself and lay in it during the more than 20 hours he was in five-point restraints. Sykes also alleges that "less forceful, yet equally effective ambulatory restraints" were available but not used. The defendants allege that Sykes was disruptive while restrained and that he was released from the restraints when his behavior improved. Defendants also allege that, during the 20 hours he was restrained, Sykes was offered one meal and three bathroom breaks, all of which Sykes refused.

Having reviewed the record as a whole and drawing all reasonable inferences in the light most favorable to Sykes, I conclude that Sykes states a viable excessive force claim and that

5

there are genuine issues of material fact precluding summary judgment on this claim. These same disputes of fact preclude defendant's argument that they are entitled to qualified immunity. *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). For these reasons, I will deny defendants' motion for summary judgment as to Sykes' excessive force claim against the remaining defendants.

V.

Sykes alleges that before and during the period he was held in five-point restraints, the defendants did not provide him with notice or a chance to be heard regarding the deprivation of his liberty through the use of the five-point restraints. The defendants state that Sykes' own actions made procedural protections impossible before and during the 20-hour restraint period. I find material disputes of fact exist as to Sykes' due process claim and, therefore, will deny summary judgment to the remaining defendants on this claim.

The Due Process Clause of the Fourteenth Amendment requires states to provide procedural rules to protect persons against mistaken deprivations of life, liberty, or property. *Carey v. Piphus*, 435 U.S. 247, 259 (1978). State prison policies may create a constitutionally protected liberty interest when they "impos[e] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).

The defendants concede that five-point restraints impose an atypical and significant hardship under *Sandin*, giving inmates a protected liberty interest in avoiding such restraints. *See Blount v. Collins*, No. 7:12cv476, 2013 U.S. Dist. LEXIS 11452, at *20, 2013 WL 4084764, at *6 (W.D. Va. Mar. 26, 2002) (citing *Faison v. Damron*, No. 7:00CV00739, 2002 U.S. Dist. LEXIS 5239, 2002 WL 467145 (W.D. Va. Mar. 25, 2002)). The defendants assert, however, that

6

procedural protections for Sykes before or during the restraint period were not possible because officers placed Sykes in five-point restraints in response to his ongoing disruptive and destructive behavior. *Williams*, 77 F.3d at 769-70 (recognizing that when prison security emergency precludes predeprivation process, post-deprivation procedural protections are adequate). They also assert that no hearing was possible during the restraint period because the period ended as soon as officers determined that Sykes' behavior was sufficiently compliant for him to be released.

Having reviewed the record as a whole and drawing all reasonable inferences in the light most favorable to Sykes, I conclude that Sykes states a viable due process claim and that there are genuine issues of material fact precluding summary judgment on this claim. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("[W]here the State feasibly can provide a predeprivation hearing before [a deprivation of a liberty interest], it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the [deprivation].") Furthermore, these same disputes of fact preclude defendant's argument that they are entitled to qualified immunity. *Buonocore*, 65 F.3d at 359. Accordingly, I will deny defendants' motion for summary judgment as to the remaining defendants on Sykes' due process claim.

**ENTER**: This 6th day of March, 2015.

/s/ Norman K. Moon
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

7

Case 7:14-cv-00017-JPJ-PMS   Document 44   Filed 03/09/15   Page 7 of 7   Pageid#: 178